# Vincent Easley, Plff. in Err., *v.* Commonwealth of Pennsylvania.

Under an indictment for fornication and bastardy, where the prosecutrix testified that she was married in Ohio when only fourteen years old; that she left her husband before she was fifteen, and had not cohabited with him

NOTE.—A wife is not competent to prove nonaccess by her husband. Com. v. Connelly, 1 Browne (Pa.) 284; Com. v. Stricker, 1 Browne (Pa.) Appx. 47; Com. v. Reed, 2 Pittsb. 470. Nor is the husband. Com. v. Reed, 2 Pittsb. 470; Com. v. Shepherd, 6 Binn. 283, 6 Am. Dec. 449. But there may

since she was sixteen; that she returned to Ohio on a visit September 12, 1885, and stayed there something over a month, when she returned to Pennsylvania, where the child was born May 24, 1886; and evidence was given by other witnesses tending to show that the man to whom prosecutrix had been married was not in Ohio at the time of her visit, and that she had not lived with him after first leaving him,—the court properly admitted evidence of the statute of Ohio, and a decision of the supreme court that marriages by females under the age of fourteen years are invalid unless confirmed by cohabitation after the age of fourteen; and such a marriage not so confirmed does not subject the woman to the charge of bigamy on a subsequent marriage, the court charging that the jury might consider this evidence on the question of the truth of the prosecutrix's evidence before the justice.

The court properly admitted the testimony of the prosecutrix, casting the paternity of the child upon the defendant, and the testimony of the attending physician as to the declarations of the prosecuting witness during labor pains, charging the jury that when the husband and wife were living together the wife cannot bastardize her own offspring by her testimony; nor could other testimony accomplish this result, unless there might be some absolute physical disability on the part of the husband to procreate; and also instructing the jury that the statements of the woman may be admitted "when the woman is *in extremis*, that is, when she is in the act of giving birth to the child;" and "if that was her situation at that time, when she was in such labor, '*in extremis*,' and believed herself to be in such peril, and under the belief made the declaration that this man was the father of the child, it is for you to consider."

An instruction to the jury was that "You have the testimony of the prosecutrix, and it is unqualifiedly to the effect that she had connection with this young man, the defendant in the case. Her testimony is very positive on this point. Now, then, turn to the other side and you have his testimony just as positive the other way." Upon the question of access by the husband the court instructed: "They have proved that he left there; and it will be for you to say, taking all the facts and all the testimony into your consideration, whether he ever returned to her, whether they ever cohabited together, and whether he had access to her in the state of Pennsylvania; . . . but if you find that there was no access on the part of the husband, and that another, not the husband, was the father of the child, it will be your duty to go farther, and say whether this defendant is guilty, because he is the only one charged here of the offense of fornication, and also of the offense of bastardy." There was no error in these instructions.

(Argued October 13, 1887.   Decided October 31, 1887.)

October Term, 1887, No. 181, W. D., before GORDON, Ch. J.,

be a conviction, though the prosecutrix is a married woman, if the non-access can be otherwise proved. Com. v. Phillips, 2 Lack. Jur. 146; Com. v. Wentz, 1 Ashm. (Pa.) 269; Com. v. Shepherd, 6 Binn. 283, 6 Am. Dec. 449.

For authorities, as to admissibility of declarations made by women in travail, see editorial note to Harper v. State, 56 L. R. A. 454.

PAXSON, STERRETT, GREEN, and WILLIAMS, JJ.   Error to the Court of Quarter Sessions of Armstrong County to review a conviction on an indictment for fornication and bastardy.  Affirmed.

The prosecutrix was one Mary McGuire, who alleged that the defendant had connection with her in August, 1885, in Armstrong county, under promise of marriage, and then begot her with child; and that she was eighteen years of age on May 27, 1885.   She testified on the trial that she was married to a man named Baldwin, in Ohio, when she was only fourteen years old; that she left her husband before she was fifteen, and had not cohabited with him since she was sixteen; that she returned to Ohio on a visit on September 12, 1885, and stayed there something over a month, when she returned to Pennsylvania, where the child was born on May 24, 1886.

Evidence was given by other witnesses for the prosecution, tending to show that Baldwin, to whom prosecutrix had been married, was not in Ohio at the time of her said visit there, and that she had not lived with him after first leaving him.

Another witness testified that Baldwin had been in Pennsylvania hunting for his wife.

The defendant denied that he had ever had connection with the prosecutrix.

Questions strongly contested were whether the prosecutrix was a married woman at the time of the alleged offense; and whether the man to whom she had been married in Ohio could have had access to her.

The testimony of the prosecutrix casting the paternity of the child upon the defendant was objected to by the defendant, upon the ground that the prosecutrix was a married woman and could not bastardize her issue, but the court overruled the objection and admitted the evidence. [1]

Dr. Bryson, called as a witness for the prosecution, testified as follows: "I am a practising physician.  I attended Mary McGuire in her labor.  I was first called on Sabbath Day, the 23d day of May.  I suppose this is the child.  I asked her when I went in a few questions, and she told me that this man Easley, I believe you spoke about, was the father of the child.  She said it was Vincent Easley's.  It threatened to be a lingering labor.  I asked her some questions in connection with that, I

was expecting labor to come on, and she told me that she had had her monthly sickness. The child was not born then; it was born before I left on Monday night, about 10 o'clock. I did state that I asked her these questions when I first went in. She was in actual labor then; she was not in the extremity of labor then."

This testimony was objected to by defendant as being declarations made by the prosecutrix when not *in extremis.* The court overruled the objection and admitted the testimony. [2]

The prosecution offered in evidence § 6384 of the Revised Statutes of Ohio, on the question of the marriage of the prosecutrix, said section being as follows:

"Male persons of the age of eighteen years and female persons of the age of sixteen years not nearer of kin than second cousins and not having a husband or wife living may be joined in marriage: Provided, always, that male persons under the age of twenty-one years and female persons under the age of eighteen years shall first obtain the consent of their fathers, respectively, or in case of the death or incapacity of their fathers, then of their mothers or guardians;" and also affirmed the report of the decision of the supreme court of Ohio in Shafher v. State, 20 Ohio, 1, as follows:

"Marriages in this state contracted by male persons under the age of eighteen years and females under fourteen are invalid, unless confirmed by cohabitation after arriving at those ages respectively. Such a marriage not thus confirmed does not subject a party to punishment for bigamy for contracting a subsequent marriage while the first husband or wife is living."

Deponent objected to this evidence as irrelevant, but the objection was overruled and the evidence admitted. [3]

The court, NEALE, P. J., charged the jury, *inter alia,* as follows:

"Now a married woman may be guilty of both offenses, of fornication and adultery, and the man having connection with her, not being her husband, may be guilty of both these offenses of fornication, and, when a birth follows, of bastardy also. [But the rule of law is this: That when the husband and wife are living together, she cannot bastardize her own offspring. If they are living as man and wife, she cannot, even though some other person not her husband should have connection with her.

When they are living as husband and wife and not separated, the offense of bastardy could not be established, unless there might be some absolute physical disability on the part of the husband to procreate.] 4. In that case the offense of fornication and bastardy might be made out as to another person. The presumption always runs that when the relation of husband and wife exists, that the father of the children born during the existence of that relation is the husband.

"It is impossible for a wife to bastardize the children during that relation of coverture, or that relation of marriage, and it is also impossible for her to do so by her own oath, in proving the husband's nonaccess,—that is, that he had no access to her, and consequently did not have connection with her. It is impossible for the wife to prove that, by her own oath; the husband cannot do, neither can the wife do so.

"She could not prove his nonaccess, and he could not prove his nonaccess, and it must be proved outside; and if you are satisfied from the evidence in this case that he did not have access, it follows then that someone did have access, and it is absolutely certain that someone did beget this child. If you are satisfied that the husband of this prosecutrix is not the father, by reason of the impossibility of access—if you are satisfied that there was no connection between the husband and wife, if the legal testimony satisfies you, beyond a reasonable doubt, that he did not have access—then you come to inquire who is the father of this child.

"[You have the testimony of the prosecutrix, and it is unqualifiedly to the effect that she had connection with this young man, the defendant in the case. Her testimony is very positive to that point.] 5. Now, then, you turn to the other side and you have his testimony just as positive the other way. He testifies that he never did have connection with her or any access to her, and he denies that he is the father of this child, or that he committed the offense of fornication with this young woman. It will be for you to reconcile this testimony.

"[In corroboration of her testimony she produces the physician who was present at the birth of the child, and it is almost proper to say that the testimony should be excluded; but we will leave it with this explanation: That the testimony may be admitted, when the woman is *'in extremis'*—that is, when she is in the act of giving birth to the child. Now, when *'in extremis'*

occurs, it is almost impossible for us to define. You understand that those pains are very severe, the labor pains, and during them it is frequently the case that the mother believes that she is not likely to survive, and on that account the law has permitted the declarations made in that extremity of labor to be given in evidence, in corroboration as to the parentage, or as to who the father of the child is. Now, if that was her situation at that time, and she was in such labor, *'in extremis,'* and believed herself to be in such peril, and under that belief made the declaration that this man was the father of the child, it is for you to consider.] [5] If, however, it was when she had no peril of childbirth upon her at all, and did not believe her life to be in jeopardy when she made these declarations, then it would not be proper evidence for you to consider. We submit that to you.

"[You have this, farther. She has testified before the justice, and it has been dwelt upon, on the part of the defendant, with considerable force, that she gave false testimony in giving that testimony. Now, in order to let you understand that, it may be true as she herself states—she may have believed that she was telling the truth when she made those declarations before the justice, because here is the law of the state of Ohio, where she was married, which seems to authorize the marriage of girls under the age of sixteen, provided they have their father's consent, or if they have no father, of their mother's or guardian's consent.] [6]

"But it is not such a statute that, in its formal words, says that any other marriage contract would be invalid. The act does not say so, and it becomes a further question to inquire to know when a marriage contract between a female under the age of sixteen with a male person would be competent, and the marriage valid. Then the statute of Ohio says if the marriage should occur under the age of sixteen and cohabitation follow that marriage, cohabitation after the age of sixteen, any time after the age of sixteen, that that would make it a valid marriage. We need not go so far as to say here, however, that there was an invalid marriage because it is not in evidence or sufficiently proved that there was no cohabitation after the age of sixteen. It is true that the wife in this case, or the alleged wife, testified that she lived with her husband eight months; but she is incompetent as to that. She cannot come into court for the pur-

pose of making that out, in this state, at least. She cannot be a witness against her own husband and make herself out an unmarried woman; and it must be shown that there was no such cohabitation after she reached the age of sixteen, in order to invalidate that marriage, because I take it there was an actual marriage contract entered into; there was a marriage, and there must be something to invalidate it before that marriage may be declared entirely void. What was there in this case? Simply the testimony of the wife saying that she did not cohabit with the husband except for eight months shortly after she was married, and that she married at about the age of fourteen in the state of Ohio, and that that would be an invalid marriage. Then, further, you have the testimony of the sister stating that they lived together about eight months and that he left. Have you any testimony to show that they did not come together at any other time? [They have proved that he left there, and it will be for you to say, taking all the facts and all the testimony into your consideration, whether he ever returned to her, whether they ever cohabited together, and whether he had access to her in the state of Pennsylvania.] [7]

"One of the witnesses called by the commonwealth testifies something,—that he was looking for his wife in Pennsylvania. Did he find her? Is there evidence sufficient to satisfy you that he did not find her?

"Now, if there was no access, and you are satisfied of that fact, and you are satisfied that this child is the child of another, and not the child of the husband of this woman [it will be for you to say who is the father of this child in court, and, as you find that, so will your verdict be.] 7

"And you may still find, notwithstanding there is a presumption that the child was the child of the husband, still there may be the offense of fornication committed by another; and if you are satisfied that the offense was committed, then it would be your duty, if you find that this defendant is the one who committed the offense of fornication (and you may), to find him guilty as to fornication alone, and not guilty as to bastardy. [But if you find that there was no access on the part of the husband, and that another, not the husband, was the father of the child, it will be your duty to go farther and say whether this defendant is guilty, because he is the only one charged here of the offense of fornication, and also of the offense of bastardy."]

The jury returned a verdict of guilty, and judgment and sentence having been pronounced, defendant took this writ, assigning as error, (1–3) the admission of evidence above stated, and (4–7) the portions of the charge inclosed in brackets, as indicated by exponents.

*Calvin Rayburn* and *David Barclay,* for plaintiff in error.—The mother of a child born in wedlock, but begotten before, is incompetent to prove that the child was not begotten by the man who became her husband before the birth of the child, in the absence of other evidence of nonaccess. 1 Bl. Com. 456, note 51; Dennison v. Page, 29 Pa. 420, 62 Am. Dec. 644.

When a child is begotten and born while its mother is a married woman, its legitimacy is presumed until the contrary is clearly made to appear. 29 Pa. 422.

A child born in wedlock, although born within a month or a day after marriage, is legitimate by presumption of law. Co. Litt. 244 a.

*J. R. Henderson,* with *D. B. Heiner,* Dist. Atty., for the commonwealth, defendant in error.

PER CURIAM:

As there is nothing in the exceptions in this case which we regard as worthy of special comment, we dismiss them, and concur in the rulings and judgment of the court below.

The judgment is affirmed; and it is ordered that the record be remitted for execution.